IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00809-PAB-SKC

DAPPCENTRAL, INC., a Delaware corporation,
REX TECHNOLOGIES, GmbH, a Switzerland corporation, and
STEPHEN KING,

    Plaintiffs,

v.

MARK GUAGLIARDO, and
UNITED STATES REAL ESTATE CORPORATION, a Hawaii corporation,

    Defendants.

---

# ORDER

---

This matter comes before the Court on Plaintiffs' Motion for Default Judgment Against United States Real Estate Corporation [Docket No. 11].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

This case arises out of a breakdown in a business relationship between plaintiffs and defendants.  Stephen King is the founder and CEO of Dappcentral, Inc. ("Dappcentral") and Rex Technologies (together, the "companies").  Docket No. 1 at 3, ¶ 13.  Mr. King formed the companies in order to exploit block-chain based software for business and consumer use.  *Id.*, ¶ 14.  Rex Technologies is the holding company that owns the software and intellectual property, and Dappcentral is the operating entity.  *Id.*, ¶ 15.  The companies developed a program called Imbrex, which is similar to a block-

1

chain version of the real estate multiple listing service, but with access to more extensive title and sales information. *Id.*, ¶ 16.

The companies intended to monetize Imbrex by using a public facing website to offer software services to the real estate business community and by licensing the software to companies in the real estate business. *Id.* at 4, ¶ 20. In December 2019, Mr. King met Mark Guagliardo and shared the companies' business plan. *Id.* at 5, ¶¶ 23-24. Mr. Guagliardo invested $50,000 in the companies, representing a 3% equity interest in each company. *Id.*, ¶ 25. Mr. Guagliardo intended to license Imbrex through his brokerage firm, United States Real Estate Corporation ("USREC"), to establish a competitor to Zillow, an online, consumer facing residential real estate marketplace. *Id.*, ¶ 24.

Mr. Guagliardo, on behalf of USREC, and Mr. King, on behalf of the companies, agreed that the companies would license Imbrex to USREC in exchange for a one-time licensing fee and a percentage of USREC's profits from its development of a "Zillow" competitor. *Id.*, ¶ 27. At the time, Imbrex intended to offer business to business services and did not have a consumer front end. *Id.* at 6, ¶ 28. Mr. King communicated this information to Mr. Guagliardo and informed Mr. Guagliardo that USREC would have to develop its own front end. *Id.* In March 2020, USREC and Rex Technologies entered into a Software Licensing Agreement and a Profit Sharing Agreement. *Id.*, ¶ 30. The Software Licensing Agreement granted USREC a non-exclusive license to Imbrex, which USREC would market using its own "front end" software and branding in exchange for a one-time license fee of $38,000.00, subject to the restriction that, during the term thereof, Rex Technologies could not license Imbrex to a third-party that also

intended to use "the same" to develop a Zillow competitor, i.e., Rex Technologies did not have a "front end" software akin to Zillow, so USREC would have to develop one. *Id.* at 6-9, ¶¶ 30, 38.  The Profit Sharing Agreement provided that USREC would pay Rex Technologies 10% of its profits from its exploitation of Imbrex.  *Id.* at 6-7, ¶ 30.  The complaint states that the Court has personal jurisdiction over USREC pursuant to a forum selection clause in the Software License Agreement.  *Id.* at 2, ¶ 10.

USREC paid the $38,000 licensing fee and Rex Technologies delivered the Imbrex code to USREC.  *Id.* at 7, ¶¶ 32-33.  Around this time, the companies entered into discussions with a venture capital firm regarding an investment in the companies. *Id.* at 7-8, ¶ 34.  On April 30, 2020, the companies and the venture capital firm entered into a binding term sheet pursuant to which the venture capital firm agreed to invest $1,200,000 in equity and also to fund or facilitate an additional approximately $7,000,000 in loans.  *Id.* at 8, ¶ 35.  Around this time, Mr. Guagliardo began claiming that Rex Technologies had not satisfied its obligations under the Software Licensing Agreement because it had not provided "front end" software to USREC.  *Id.*, ¶ 36.

Mr. Guagliardo made various demands, including a demand to inspect the companies' records, and threatened to bring suit for fraud and to defame Mr. King and the companies.  *Id.* at 8-11, ¶¶ 38-47.  Mr. King attempted to placate Mr. Guagliardo, despite his belief that the claim was meritless.  *Id.*  Mr. King disclosed Mr. Guagliardo's threats and demands to the venture capital firm.  *Id.* at 11, ¶ 48.  Shortly thereafter, Mr. Guagliardo sent written communications to approximately 50 potential customers and/or investors of the companies claiming that USREC had an exclusive license to Imbrex and that USREC was preparing a fraud lawsuit and criminal charges against Mr. King

and the companies for breach of contract. *Id*. at 12, ¶ 51. As a result of this communication, the venture capital firm terminated the binding term sheet without funding the investment. *Id.* at 13, ¶ 54.

On March 19, 2021, plaintiffs filed suit. *See generally id*. Plaintiffs bring five claims: (1) defamation against both defendants; (2) tortious interference against Mr. Guagliardo; (3) breach of contract by Rex Technologies against USREC; (4) declaratory judgment against USREC; and (5) breach of contract/recission by Rex Technologies against USREC.[1] *Id.* at 13-22, ¶¶ 58-106.

Neither defendant has entered an appearance. On May 27, 2021, plaintiffs submitted a certificate of service as to USREC. Docket No. 7. On June 16, 2021, the Clerk of Court entered default as to USREC. Docket No. 10. Plaintiffs subsequently filed a motion for default judgment against USREC. Docket No. 11. Plaintiffs seek default judgment on claims one and three and ask for a hearing on damages. *Id.* at 5-8.

## II. LEGAL STANDARD

In order to obtain a judgment by default, a party must follow the two-step process described in Fed. R. Civ. P. 55. First, the party must seek an entry of default from the Clerk of the Court under Rule 55(a). Second, after default has been entered by the Clerk, the party must seek judgment under the strictures of Rule 55(b). *See Williams v. Smithson*, 57 F.3d 1081, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished table decision) (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)).

---

[1] The complaint additionally brought a sixth claim. Docket No. 1 at 23. However, plaintiffs withdrew this claim in their motion for default judgment. Docket No. 11 at 2.

The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (citation omitted). In exercising that discretion, the Court considers that "[s]trong policies favor resolution of disputes on their merits." *Ruplinger v. Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (quotation and citations omitted). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* It serves to protect plaintiffs against "interminable delay and continued uncertainty as to his rights." *Id.* at 733. When "ruling on a motion for default judgment, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Seme v. E&H Prof'l Sec. Co., Inc.*, No. 08-cv-01569-RPM-KMT, 2010 WL 1553786, at *11 (D. Colo. Mar. 19, 2010).

A party may not simply sit out the litigation without consequence. *See Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444-45 (10th Cir. 1983) ("[A] workable system of justice requires that litigants not be free to appear at their pleasure. We therefore must hold parties and their attorneys to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard."). One such consequence is that, upon the entry of default against a defendant, the well-pleaded allegations in the complaint are deemed admitted. *See* 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2688.1 (4th ed., 2020 rev.). "Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere

5

conclusions of law." *Id*.  A court need not accept conclusory allegations.  *Moffett v. Halliburton Energy Servs., Inc.* 291 F.3d 1227, 1232 (10th Cir. 2002).  Although "[s]pecific facts are not necessary" in order to state a claim, *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted).

### III.  ANALYSIS

Before addressing the merits of plaintiffs' motion for default judgment, the Court must determine whether it has subject matter jurisdiction over the case and personal jurisdiction over USREC.  *See Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997) (holding that "a district court must determine whether it has jurisdiction over the defendant before entering judgment by default against a party who has not appeared in the case").  The Court finds that it has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000.  The Court next considers personal jurisdiction.

### A.  Service of Process

Proper service is a jurisdictional prerequisite to litigation.  *Jenkins v. City of Topeka*, 136 F.3d 1274, 1275 (10th Cir. 1998) ("Effectuation of service is a precondition to suit.").  Without proper service, the Court lacks personal jurisdiction over a defendant.  *Okla. Radio Assocs. v. Fed. Deposit Ins. Co.*, 969 F.2d 940, 943 (10th Cir. 1992).

On May 27, 2021, plaintiffs filed a proof of service indicating that plaintiffs had been unable to personally serve USREC, but had completed service in compliance with Haw. Rev. Stat. § 414-64(b).  *See* Docket No. 7 at 1-2.  Rule 4(e)(1) of the Federal Rules of Civil Procedure allows service to be made "following state law" for either the state where the forum court is located (here, Colorado)[2] or the state where service is made (Hawaii).  Plaintiffs bear the burden of proving that service of process is sufficient.  *Fed. Deposit Ins. Co. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992).

Under Hawaii District Court Rule of Civil Procedure 4, a corporation shall be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."[3]  Haw.

---

[2] Plaintiffs make no argument that they completed service on USREC under the laws of Colorado, *see generally* Docket Nos. 7, 8, 11, and the Court accordingly does not consider the issue.

[3] Plaintiffs seek default judgment against USREC only, *see* Docket No. 11 at 1, and the Court accordingly does not consider whether service was proper on Mr. Guagliardo.

Dist. Ct. R. Civ. P. 4(d)(3).  However, Rule 4(d)(8) provides that service on a corporation "is also sufficient if the summons and complaint are served in the manner prescribed by any statute."  Haw. Dist. Ct. R. Civ. P. 4(d)(8).  Section 414-64(b) of the Hawaii Revised Statutes states:

> If no officer, director, manager, superintendent, or other person in charge of the property, business, or office of the corporation can be found within the State, and the corporation has not filed with the department director, pursuant to this chapter, the name of a registered agent upon whom legal notice and process from the courts of the State may be served, or the person named is not found within the State, service may be made upon the corporation by registered or certified mail, return receipt requested, addressed to the corporation at its principal office.

If service is done by registered or certified mail, it is perfected, *inter alia*, five days after its deposit in the mail, "as evidenced by the postmark, if mailed postpaid and correctly addressed."  Haw. Rev. Stat. § 414-64(c)(3).

Plaintiffs provide evidence that Mr. Guagliardo is the registered agent of USREC.  Docket No. 7-1 at 2.  Both Mr. Guagliardo and USREC's addresses are listed as 1043 Makawao Avenue, Suite 110, Makawao, Hawaii 96768 in the records of the Hawaii Business Registration Division.  *Id.*  The affidavit of Noelle Collins, a paralegal, states that plaintiffs made multiple attempts to personally serve USREC at this address, but no officer, director, manager, superintendent, or other person in charge of the business was found within Hawaii.  Docket No. 7 at 1-2, ¶ 3.  Ms. Collins also states that Mr. Guagliardo could not be located within Hawaii.  *Id.*  Because no registered agent, officer, director, manager, superintendent, or other person in charge of USREC could be located within the state, the Court finds that "service may be made upon the corporation by registered or certified mail, return receipt requested, addressed to the corporation at its principal office."  *See* Haw. Rev. Stat. § 414-64(b).

8

Ms. Collins deposited copies of the complaint and summons in the United States mail on April 16, 2021.  Docket No. 7 at 1, ¶ 2.  The summons and complaint were mailed certified mail, return receipt requested, addressed to both Mr. Guagliardo and USREC at 1043 Makawao Avenue 110, Makawao, Hawaii 96768.  Docket No. 7-2.  The Court accordingly finds that service on USREC has been perfected.

### B.  Due Process

The plaintiff bears the burden of establishing personal jurisdiction.  *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir. 1988).  The plaintiff can satisfy its burden by making a prima facie showing.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  The Court will accept the well-pleaded allegations of the complaint as true in determining whether plaintiffs have made a prima facie showing that personal jurisdiction exists.  *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id.*  The plaintiff, however, may also make this prima facie showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Dudnikov*, 514 F.3d at 1070.  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiffs' favor."  *Id.*

#### *1.  Plaintiffs' Motion for Default Judgment*

The Court first notes that plaintiffs' motion does address personal jurisdiction.  *See generally* Docket No. 11.  Given that it is plaintiffs' burden to establish personal jurisdiction, *see Rambo*, 839 F.2d at 1417, this provides grounds to summarily deny the

motion for default judgment. Nevertheless, the Court will address the possible bases for personal jurisdiction found in the complaint.

### 2. Forum Selection Clause

"In determining whether a federal court has personal jurisdiction over a defendant, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1209 (10th Cir. 2000)). Parties may consent to personal jurisdiction through the use of a forum-selection clause. *See Burger King v. Rudzewicz*, 471 U.S. 462, 473 (1985). Forum-selection clauses generally establish a prima facie case of personal jurisdiction. *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir. 1992).

The complaint states that the Court has personal jurisdiction over USREC pursuant to a forum selection clause in the Software License Agreement. Docket No. 1 at 2, ¶ 10. Later in the complaint, plaintiffs indicate that the Software License Agreement and Profit Sharing Agreement are attached to the complaint. *Id.* at 7, ¶ 30. However, there are no documents attached to the complaint besides the civil cover sheet. *See* Docket No. 1-1. The motion for default judgment references these contracts as exhibits in a context unrelated to personal jurisdiction, *see* Docket No. 11 at 7, but does not attach them. As noted above, the motion for default judgment does not provide any argument regarding personal jurisdiction over USREC. *See generally id.* The Court therefore assumes that the forum selection clause is the basis for personal jurisdiction over USREC.

Forum-selection clauses are generally enforceable. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991); *Kevlion, Inc. v. PetroChine Canada Ltd.*, 918 F.3d 1088, 1093-94 (10th Cir. 2019). The Tenth Circuit "will enforce a mandatory forum-selection clause unless the party challenging it 'clearly shows that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching.'" *Niemi v. Lasshofer*, 770 F.3d 1331, 1351 (10th Cir. 2014) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)). However, the language of a forum-selection clause is crucial to determining whether a particular action falls within its scope. *See Kevlion*, 918 F.3d at 1093 (limiting the scope of a forum-selection clause based on "the conjunction linking the two clauses" in the forum-selection clause).

The Court does not have the language of the forum-selection clause before it. Accordingly, the Court cannot determine whether or not the forum-selection clause governs this action. While the Court accepts the well-pled allegations of the complaint as true, plaintiffs' assertion that the Court has personal jurisdiction based on the forum selection clause is a legal conclusion. The Court therefore concludes that plaintiffs have not shown personal jurisdiction over USREC based on the forum selection clause. The Court nevertheless looks to additional bases to determine whether it has personal jurisdiction over USREC.

### 3. *General Personal Jurisdiction*

USREC is a Hawaiian corporation with its principal place of business in Hawaii. Docket No. 1 at 2, ¶ 5. "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations

with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). For corporations, "the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quoting *Goodyear*, 564 U.S. at 924). A court may not exercise general jurisdiction over a foreign corporation simply because it has continuous and systematic business contacts with the forum; the affiliations with the state must be so continuous and systematic as to render the corporation essentially at home in the forum state. *Daimler*, 571 U.S. at 139.

To determine whether a foreign defendant is "at home" in the forum state, "the inquiry 'calls for an appraisal of a corporation's activities in their entirety'; '[a] corporation that operates in many places can scarcely be deemed at home in all of them.'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017) (quoting *Daimler*, 571 U.S. at 139 n.20). The only allegations in the complaint regarding Colorado are that plaintiffs are citizens of Colorado. *See* Docket No. 1 at 1-2, ¶¶ 1-3. This is insufficient to establish general personal jurisdiction.

### 4. Specific Personal Jurisdiction

"Specific jurisdiction . . . is premised on something of a *quid pro quo:* in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov*, 514 F.3d at 1078. Courts typically make three inquiries to determine if a state's exercise of sovereignty over a defendant can be described as fair and just for

specific jurisdiction: "(1) whether the defendant purposefully directed its activities at residents of the forum state; (2) whether the plaintiff's injury arose from those purposefully directed activities; and (3) whether exercising jurisdiction would offend traditional notions of fair play and substantial justice." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013). "[W]here, as here, the [motion for default judgment] is determined on the basis of the pleadings and affidavits, that burden may be met by a prima facie showing." *Sharpshooter Spectrum Venture, LLC v. Consentino,* No. 09-cv-0150-WDM-KLM, 2011 WL 3159094, at *2 (D. Colo. July 26, 2011) (citing *Shrader v. Biddinger,* 633 F.3d 1235, 1239 (10th Cir. 2011)).

Plaintiffs fail to plead that their injury arose from activities directed at Colorado. *See Newsome*, 722 F.3d at 1264. "A plaintiff's injury must 'arise out of or relate to' the defendant's forum contacts." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 472-73). Plaintiffs have pled no facts showing that the injury from the alleged infringing activity has any relation to USREC's contacts with Colorado. *See XMission L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020) ("Specific jurisdiction . . . allows a court to exercise jurisdiction over an out-of-state defendant only for claims related to the defendant's contacts with the forum State."); *id.* ("The arising-out-of component of the test requires courts to ensure that there is an adequate link between the forum State and the claims at issue, regardless of the extent of a defendant's other activities connected to the forum."). Additionally, the mere fact that USREC contracted with Colorado citizens is insufficient to establish minimum contacts. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("But the plaintiff cannot be the only link

between the defendant and the forum.  Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him."); *Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot").  Plaintiffs may be able to plead facts showing specific personal jurisdiction, but they have not done so at this stage.  Accordingly, the Court will deny the motion for default judgment without prejudice for failure to plead facts showing personal jurisdiction.

## IV.  CONCLUSION

Accordingly, it is

**ORDERED** that Plaintiffs' Motion for Default Judgment Against United States Real Estate Corporation [Docket No. 11] is **DENIED without prejudice**.  It is further

**ORDERED** that Count VI is deemed **WITHDRAWN**.


DATED August 30, 2022.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge